**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**EDOUARD BAKER,**

                              **Plaintiff,**                    **5:12-cv-225**
                                                                **(GLS)**

              **v.**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,[1]

                              **Defendant.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                          KAREN S. SOUTHWICK, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

Legal Aid Society of                       MICHAEL J. TELFER, ESQ.
Northeast New York
55 Colvin Avenue
Albany, NY 12206

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                  ANDREEA L. LECHLEITNER
United States Attorney                     Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
_____

        [1] The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social
Security, for defendant Michael J. Astrue, and amend the caption accordingly.  _See_ Fed. R.
Civ. P. 25(d).

Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Edouard Baker challenges the Commissioner of Social Security's denial of his claim for a period of disability and Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Baker's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II.  Background

On March 31, 2008, Baker filed an application for DIB under the Social Security Act ("the Act"), alleging disability since February 29, 2008. (*See* Tr.[2] at 88, 158-61.)  After his application was denied, (*see id.* at 108-12), Baker requested a hearing before an Administrative Law Judge (ALJ),

---

[2] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 13.)

2

which was held on March 5, 2010 before ALJ Zachary Weiss.  (*See id.* at 38-68, 115-16.)  Subsequently, ALJ Weiss issued an unfavorable decision and found that Baker was not disabled.  (*See id.* at 89-104.)  At Baker's request, the Social Security Administration Appeals Council remanded the case for a new hearing, which was conducted before ALJ John P. Ramos.  (*See id.* at 69-86, 105-07, 128.)  On August 9, 2011, ALJ Ramos (hereinafter "the ALJ") issued a decision denying benefits, which became the Commissioner's final determination upon the Appeals Council's denial of review.  (*See id.* at 1-4, 9-37.)

Baker commenced the present action by filing his Complaint on February 3, 2012 wherein he sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 11, 13.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 16, 17.)

## III.  Contents

Baker contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (*See* Dkt. No. 16 at 11-25.)  Specifically, Baker claims that the: (1) residual functional capacity

3

(RFC) determination is unsupported by substantial evidence and the product of legal error; (2) ALJ improperly evaluated his credibility; and (3) step four determination is unsupported by substantial evidence and the product of legal error.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is supported by substantial evidence.  (*See* Dkt. No. 17 at 6-20.)

## IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations.  (*See* Dkt. No. 16 at 3-10; Dkt. No. 17 at 1.)

## V. <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. <u>Discussion</u>

## A.  <u>RFC Determination</u>

4

First, Baker claims that the RFC determination is infirm because the ALJ erred in affording : (1) "little weight" to the opinions of treating physician Moses Kyobe; (2) "great weight" to the opinion of impartial medical expert Michael Falkove; and (3) "some weight" to the opinion of state agency medical consultant B. Gajwani.  (Dkt. No. 16 at 11-21.)  The Commissioner responds, and the court agrees, that the RFC finding is supported by substantial evidence and was arrived at by properly applying the relevant legal principles.  (*See* Dkt. No. 17 at 6-14.)

A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence[3] in the record.  *See Frye ex rel. A.O. v. Astrue*, No. 11-1585-cv, 2012 WL 2125910, at *2 (2d. Cir. June 13, 2012).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

---

[3] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

Here, the ALJ determined that Baker retained the RFC to perform "a wide range of sedentary work." (Tr. at 21.)  More specifically, the ALJ found that Baker could, among other things, lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently and, in an eight-hour work day, sit for six hours and stand and/or walk for two hours.  (*See id.*)  The ALJ also found that Baker must avoid frequent fine manipulation or repetitive hand-finger actions with his left hand.  (*See id.*)

Turning first to the opinions of Dr. Kyobe, the ALJ afforded "little weight" to the medical source statements he provided in March 2010 and July 2011, but "greater weight" to his earlier opinion referenced in July 2008 records from Vocational and Educational Services for Individuals with Disabilities (VESID) because "the record fails to show any significant worsening of clinical signs and findings to support greater limitations" than those contained in the VESID records.  (*Id.* at 27-28.)  According to the July 2008 VESID records, Dr. Kyobe opined that Baker was capable of sitting eight hours with rests, standing and walking two hours a day with rests, lifting and carrying twenty-one to fifty pounds, and had a moderate limitation for being around moving machinery.  (*See id.* at 492.)  In his March 2010 medical source statement, however, Dr. Kyobe opined that

Baker could only sit for about four hours and stand and/or walk for less than two hours in an eight-hour day, but he did not need a job that permits shifting positions at will, would not need to take unscheduled breaks, and did not need to elevate his legs while sitting.  (*See id.* at 532-33.)  Dr. Kyobe also reported that Baker could frequently lift and carry ten pounds and occasionally grasp, turn, and twist objects, perform fine manipulations with his fingers, and reach with his arms.  (*See id.* at 533-34.)  Lastly, Dr. Kyobe opined that Baker would, on average, be absent from work one day a month as a result of his impairments and his symptoms would rarely interfere with his attention and concentration.  (*See id.* at 534.)  Finally, in his July 2011 opinion, Dr. Kyobe opined that Baker could sit for less than two hours a day, stand and/or walk for less than two hours a day, frequently lift ten pounds, required three to four unscheduled breaks during an eight-hour work day, and would need to elevate his legs while sitting thirty percent of the time.  (*See id.* at 625.)  According to Dr. Kyobe's July 2011 opinion, Baker would be unable to maintain attention or perform at a consistent pace more than twenty percent of the time and miss more than four days of work per month due to his impairments.  (*See id.* at 626.)

Controlling weight will be given to a treating source's opinion on the

nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must provide "good reasons for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted).

Here, Baker raises several objections to the ALJ's evaluation of Dr. Kyobe's opinions.  First, he contends that the ALJ's discussion of the July 2008 VESID records is infirm because the ALJ did not specify when Dr. Kyobe's opinion was rendered, arguing that this omission—and the lack of clarity in the record as to the date when the opinion was rendered—requires remand so that the ALJ can prepare a written decision that explains in clear and understandable language the specific reasons for

8

the decision.  (*See* Dkt. No. 16 at 14; Dkt. No. 19 at 3-4.)  This argument is

without merit.  The ALJ's discussion of Dr. Kyobe's opinions and the weight

given to them is clear and articulate.  Although it does not appear that the

opinion referenced in the July 2008 VESID records is itself contained in the

record, the ALJ properly discounted Dr. Kyobe's opinions because they

were progressively more restrictive from July 2008 to July 2011, despite a

lack of evidence suggesting a worsening of Baker's condition.  (*See* Tr. at

27-28.)  Further, the ALJ explained that he did not give controlling weight to

Dr. Kyobe's opinions because they were not well-supported by the

objective medical evidence of record and were inconsistent with substantial

evidence, including Baker's wide range of activities.  (*See id.* at 28.)

Baker also claims that the ALJ failed to consider the proper factors in

evaluating Dr. Kyobe's opinions, including the length of his treating

relationship with Dr. Kyobe and the fact that Dr. Kyobe practices

cardiology.  (*See* Dkt. No. 16 at 14.)  In making his RFC determination, the

ALJ explicitly referenced 20 C.F.R. § 404.1527 as well as relevant social

security rulings.  (*See* Tr. at 21.)  Moreover, the ALJ's decision specifically

noted that Dr. Kyobe saw Baker three to four times per year or more as his

treating cardiologist and thoroughly discussed Dr. Kyobe's various opinions

over a three-year span.  (*See id.* at 15, 22, 27-28.)  Thus, it is evident that

the nature and duration of Dr. Kyobe's treatment relationship with Baker

were properly considered.  As it is clear that he properly applied section

404.1527(c), the ALJ did not err in failing to methodically discuss each

individual factor, and his assessment of Dr. Kyobe's opinions is legally

sound.  *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,595-96 (Aug. 9, 2006)

("Not every factor for weighing opinion evidence will apply in every case.").

Finally, Baker agues that Dr. Kyobe's opinions are consistent with the

medical evidence in the record and, further, as the record shows a

significant worsening of clinical signs and findings from July 2008 through

July 2011 the ALJ erred in finding the contrary.  (*See* Dkt. No. 16 at 14-15.)

He points to March 2010 treatment records from Dr. Kyobe which note that

Baker's ejection fraction worsened from the previous study in February

2008 and his exercise capacity decreased.  (*See id.* at 14; Tr. at 608-09.)

However, because Dr. Kyobe's more restrictive opinions in March 2010

and July 2011 were not consistent with other substantial evidence in the

record, including the opinions of the other medical experts, the ALJ did not

err in affording them little weight.  *See Halloran*, 362 F.3d at 32.

In March 2008, Dr. Kyobe examined Baker and noted that a recent

nuclear stress test was negative for ischemia, negative for infarction, revealed an ejection fraction of sixty-six percent, and revealed a normal exercise capacity.  (*See* Tr. at 346.)  Dr. Kyobe also noted that Baker was tolerating his medications without side effects.  (*See id.* at 349.)  Based on this examination, Dr. Kyobe opined that Baker could resume work, but should avoid lifting more than thirty pounds.  (*See id.*)  Thereafter, in April, July, and November 2008 and March, July, and November 2009, treating physician Angelo Porcari examined Baker and noted regular heart sounds with no gallop or murmurs and no evidence of edema in his extremities. (*See id.* at 516-18, 522-23, 525-26.)  In October 2008, Dr. Porcari examined Baker when he was admitted to the hospital complaining of chest pain.  (*See id.* at 547-48.)  Baker's heart sounds were regular, extremities revealed no edema, an electrocardiogram revealed a normal sinus rhythm and no acute changes, and a chest x-ray revealed no acute disease.  (*See id.* at 547.)  At this time, an echocardiogram revealed "normal left ventricular systolic function, [an] ejection fraction [of sixty-five] percent, evidence for left ventricular diastolic dysfunction, normal right ventricular systolic function, [a] midly enlarged left atrium, mitral regurgitation, [and the] aortic root was in the upper limits of normal."  (*Id.* at 548.)  The hospital

11

records note that Baker's hospital course was uneventful, his activity was increased and he was able to ambulate at liberty without experiencing any shortness of breath or chest pain, and he was discharged the next day. (*See id.* at 547-48.)

Treatment records from New York Heart Center in August 2009, March, June, and December 2010 and January and April 2011 reveal normal heart sounds and no murmur.  (*See id.* at 530, 589, 594, 600, 605, 612.)  Baker's jugular veins were not distended and his lungs were clear to auscultation with equal air entry and no rubs noted.  (*See id.*)  At times, Dr. Kyobe found evidence of edema but at several points throughout the record, no edema was found.  (*See id.* at 530, 590, 595, 601, 605, 612.) An exercise nuclear stress test, conducted in March 2010, concluded that Baker's ejection fraction had worsened to fifty-five percent and his exercise capacity had decreased, however, no ischemia was noted, his heart rate response to exercise was normal, and he had a good exercise capacity. (*See id.* at 609.)  In addition, on numerous occasions Baker's gait and station were observed to be normal.  (*See id.* at 530, 590, 601, 605.) Baker was described as "asymptomatic" with respect to his coronary artery disease, his hyperlipidemia was treated with medication, and his

hypertensive heart disease was controlled.  (*Id.* at 531, 590, 595, 601, 606, 613.)  An echocardiogram conducted in January 2011 revealed similar results of that performed in October 2008, although Baker's ejection fraction was now fifty-five to sixty percent.  (*See id.* at 552, 596-97.) Moreover, Dr. Kyobe's treatment records indicate that Baker exercised regularly by walking and biking, in December 2010, he reported using a snow blower without any chest discomfort, and, in April 2011, he reported that the shortness of breath that he had complained of in January 2011 had improved.  (*See id.* at 589-90, 594, 598, 600, 604, 611.)

In February 2010, Dr. Falkove reviewed Baker's medical records and opined that Baker suffered some limitation in his ability to bend, lift, and walk, but no limitation in his ability to sit and was "certainly capable" of sedentary or light capacity work.  (*Id.* at 497.)  Baker claims that, because Dr. Falkove's opinion was vague, addressed issues reserved for the Commissioner, and based upon an incomplete medical record, the ALJ erred in affording great weight to his opinion.  (*See* Dkt. No. 16 at 18-20.) Contrary to Baker's argument, the Commissioner will "consider opinions from medical sources on issues such as [a claimant's] residual functional capacity[, although] the final responsibility for deciding these issues is

13

reserved to the Commissioner." 20 C.F.R. 404.1527(d)(2). Further, in

making his determination, an ALJ may rely "upon the opinions of both

examining and non-examining State agency medical consultants, since

such consultants are deemed to be qualified experts in the field of social

security disability." *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y.

2010). To that end, the opinions of consulting physicians "need not be

reduced to any particular formula," as long as the opinion is not so vague

as to render it useless. *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000),

*superceded by statute on other grounds*, 20 C.F.R. § 404.1560(c)(2).

Here, Dr. Falkove's opinion clearly supports the ALJ's determination that

Baker could perform the physical demands of sedentary work. (*See* Tr. at

21, 25-26); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643

(2d Cir. 1983) ("By its very nature 'sedentary' work requires a person to sit

for long periods of time even though standing and walking are occasionally

required."). Further, the ALJ undertook a thorough review of the evidence

relating to the period after Dr. Falkove's opinion was rendered and properly

determined that there was no significant worsening of clinical signs and

findings than those identified by Dr. Falkove. (*See* Tr. at 26-28); *c.f.*

*Dombert v. Astrue*, No. 09-cv-6547, 2010 WL 4878952, at *5 (W.D.N.Y.

14

Dec. 1, 2010); *Young v. Astrue*, No. 7:05-CV-1027, 2008 WL 4518992, at *9 (N.D.N.Y. Sept. 30, 2008).

Lastly, the ALJ gave some weight to the opinion of Dr. Gajwani, who reviewed Baker's medical records in May 2008 and concluded that he was capable of performing light work.  (*See* Tr. at 27, 451.)  Dr. Gajwani also completed an RFC assessment and opined that Baker could frequently lift ten pounds, occasionally lift twenty pounds, had no restrictions with respect to pushing or pulling other than as shown for lifting and carrying, and could stand and/or walk for two hours and sit for six hours in an eight-hour work day.  (*See id.* at 454.)  However, the ALJ dismissed this RFC assessment as that of a "non-examining [s]ingle [d]ecisionmaker" and failed to give it any weight.  (*Id.* at 28.)  Baker argues that, as the ALJ did not consider Dr. Gajwani's functional assessment of Baker and his opinion that Baker could perform light work addressed an issue reserved for the Commissioner, the ALJ erred in giving his opinion some weight.  (*See* Dkt. No. 16 at 20-21.) Again, the court finds that the ALJ's consideration of a medical consultant's opinion that Baker could perform light work was proper.  *See* 20 C.F.R. § 404.1527(e)(2).  Moreover, Dr. Gajwani's RFC assessment further supports the ALJ's determination and, thus, the ALJ's failure to afford it any

weight is, at most, harmless error.  (*See* Tr. at 453-58); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").  Ultimately, the ALJ's RFC determination is supported by substantial evidence in the record and will not be disturbed.

**B.**   **Credibility Determination**

Next, Baker asserts that the ALJ erred in assessing his credibility.  (*See* Dkt. No. 16 at 21-23.)  Specifically, Baker claims that the ALJ: (1) penalized him for performing basic daily activities; and (2) failed to consider his financial difficulties when assessing his infrequent treatment.  (*See id.*)  The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted).  In performing this analysis, the ALJ

"must consider the entire case record and give specific reasons for the

weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg.

34,483, 34,485 (July 2, 1996).  Thus, "after weighing the objective medical

evidence in the record, the claimant's demeanor, and other indicia of

credibility," an ALJ may reject the claimant's subjective allegations

regarding limitation as long as he sets forth his "reasons with sufficient

specificity to enable [the court] to decide whether the determination is

supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648,

651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ found that "the statements provided by [Baker] and his

wife concerning the intensity, persistence and limiting effects of [his]

symptoms are not fully credible."  (Tr. at 23.)  This determination is not

tainted by legal error and is supported by substantial evidence.  Indeed, the

ALJ properly considered the relevant factors outlined in 20 C.F.R.

§ 404.1529(c)(3) in refusing to fully credit Baker's allegations.  (*See* Tr. at

21-29.)  As the ALJ properly found, Baker's own statements suggest that

he maintains a good ability to perform activities of daily living despite his

claimed limitations in some of those activities.  (*See id.* at 25.)  Specifically,

Baker mows his lawn, exercises regularly by walking and biking, rakes leaves, and goes shopping three times a week. (*See id.* at 81, 205-07, 347, 594, 604, 611.) Baker testified that his wife was responsible for snow removal, but, in December 2012, he reported using a snow-blower without experiencing any chest discomfort. (*See id.* at 60, 598.) Further, the ALJ found that Baker's use of medication and treatment was inconsistent with greater limits of functioning. (*See id.* at 23.)[4] Finally, the ALJ properly considered the fact that Baker stopped working, not due to his medical impairments, but because of a scheduling dispute with his employer. (*See id.* at 25, 46, 52, 77.)

## C.   **Step Four Determination**

Lastly, Baker argues that the ALJ's step four determination is flawed because: (1) errors in the RFC and credibility determination render the step four determination unsupported by substantial evidence; and (2) the ALJ

---

[4] According to Baker, the ALJ erred by drawing an inference about Baker's credibility due to his "limited treatment with his cardiologist and primary care physician for his cardiovascular impairments" without first considering his claims of financial difficulties. (Dkt. No. 16 at 22-23.) However, the record does not support Baker's claims that he did not receive treatment for financial reasons. *See Davis v. Comm'r of Soc. Sec.*, No. 5:10 CV 945, 2011 WL 1376699, at *10 (N.D. Ohio Mar. 25, 2011). It appears that Baker saw his cardiologist and primary care physician as often as they recommended. (*See* Tr. at 349, 356, 360, 364, 508-09, 511-18, 520-27, 531, 591, 595, 601, 606, 610.) Further, as the ALJ noted, since January 2010, Baker's treatment with his primary care physician was for symptoms unrelated to his severe impairments. (*See id.* at 24, 527.)

failed to introduce testimony from a vocational expert (VE) "which was needed to reconcile conflicts in [Baker's] description of his past relevant work and the definition of the past relevant work in the [Dictionary of Occupational Titles (DOT)]."  (Dkt. No. 16 at 23-25; *see* Dkt. No. 19 at 4-5.) This argument is also unavailing.

"[I]n the fourth stage of the [disability ] inquiry, the claimant has the burden to show an inability to return to h[is] previous specific job *and* an inability to perform h[is] past relevant work generally."  *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003).  In other words, a claimant is not disabled if he can perform his past relevant work, either as he actually performed it, or as it is generally performed in the national economy.  *See* SSR 82-61, 1982 WL 31387, at *2 (1982); *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981).  "'[I]n order to determine at step four whether a claimant is able to perform h[is] past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities.'"  *Kochanek v. Astrue*, No. 08-CV-310, 2010 WL 1705290, at *11 (N.D.N.Y. Apr. 13, 2010) (quoting *Kerulo v. Apfel*, No. 98 CIV. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999)).

19

In making this determination, "[a]n ALJ may rely on the claimant's statements, which 'are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.'" *Kochanek*, 2010 WL 1705290, at *11 (quoting SSR 82-62, 1982 WL 31386, at *3 (1982)).  An ALJ may also consult with a VE who can provide evidence of "the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

    In this case, the ALJ found that Baker could perform his past work as a shipping and receiving clerk as he actually performed it.  (*See* Tr. at 29-31.)  Specifically, the ALJ considered Baker's assertions in his April 2008 Work History Report that this position required him to work ten-hour days, four days a week, during which he would stand for one hour, walk for two hours, and sit for six hours.  (*See id.* at 29, 212.)  Baker also reported that the heaviest weight he would carry in this position was less than ten pounds.  (*See id.* at 212.)  He described his job duties as "writ[ing] down the number of trucks and record[ing] outgoing and incoming times, g[iving] directions, [and] clean[ing his] area." (*See id.*)  According to Baker, this job did not require any other writing, typing, or handling of small objects.  (*See*

20

*id.*)  Nor did it require any stooping, kneeling, crouching, crawling, or handling, grabbing, or grasping of big objects.  (*See id.*)  The ALJ also considered Baker's testimony at the March 2010 administrative hearing that this position required him to stand and/or walk about two hours, for ten to twenty minutes at a time, and sit for about six hours in an eight-hour work day.  (*See id.* at 29, 47-48.)  Baker testified that the job required him to check the warehouse and record if something was wrong, sign in trucks, answer the phone, and, once in a while, sweep the floors in a small area.  (*See id.* at 46-48, 52-53.)  The ALJ credited Baker's testimony at the first administrative hearing over that at the second hearing, held in July 2011, in which Baker asserted that he spent fifty percent of his eight-hour shifts walking, in order to check two buildings and a railroad track.  (*See id.* at 30, 73-74.)

Here, as explained above, the RFC and credibility determinations are supported by substantial evidence, and, thus, Baker's arguments with respect to these determinations are meritless.  *See supra* Part VI.A-B.  Further, the ALJ properly credited Baker's testimony at the March 2010 hearing in determining the physical demands of Baker's past relevant work.  (*See* Tr. at 30-31); *Carroll*, 705 F.2d at 642 ("It is the function of the

Secretary, not [the court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").  As the ALJ explained, "those statements were made closer in time to when [Baker] worked and therefore likely represent a more accurate description of his work duties" than his testimony at the July 2011 hearing.  (Tr. at 30.)  Moreover, in December 2010, Baker reported to a VESID counselor that his work as a shipping/receiving clerk was "a primarily sedentary job" and expressed concern that this fact "negatively influenced his capacity to obtain Social Security Disability Insurance."  (*Id.* at 574.)  As the ALJ's determination regarding the relevant physical demands of Baker's past work is supported by substantial evidence, the ALJ did not err in failing to consult with a VE.  *See* 20 C.F.R. § 404.1560(b)(2) (indicating that evidence from a VE is not required, but "may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work").

Based on the above, the court finds no reversible error with regard to the ALJ's determination that Baker could perform the work of a shipping and receiving clerk as it was actually performed.  (*See* Tr. at 29); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

## D.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Baker's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 28, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court